Background. Karen King Leff (Karen) appeals from an order of the Probate and Family Court mandating the sale of a "house lot" she owned together with her brother, Peter R. King (Peter), and her sister, appellee Deborah King (Deborah), and from the final decree on a petition for partition of that property. Karen also purports to appeal from an order of that same court denying her cross motion for summary judgment, and granting Deborah's, in a related breach of contract action.[3] The facts are, for the most part, undisputed.
The parties owned together two pieces of real property. One, the house lot, was a residential dwelling in Montgomery. The other, the "wood lot," was a landlocked fifteen-acre parcel of land, also in Montgomery. On November 26, 2012, the parties executed a contract to dispose of both lots.
The contract provided as follows. Deborah would select a broker to list the lots within thirty days, with the house lot at an initial sales price of $275,000 and the wood lot at $42,500. The siblings would share equally in the proceeds. Deborah's contract with the broker would contain terms that the parties to the agreement would be "excepted from the broker's commission" and that the broker would receive no commission if one of the parties purchased the property. If the broker could not secure a sales price of at least $215,000, then Karen, Peter, or both would have the option to purchase the property for $201,000. The contract also provided that the parties "shall accept" offers within ten percent of the listed sales price, provided there were no further costs to the estate.
On May 28, 2013, Deborah informed Karen and Peter that the house lot had been listed. This listing was for $265,000, but Karen and Peter did not know at the time that the property had been listed at a reduced price from that specified in the parties' contract. Deborah's contract with the broker did not include the required terms restricting the broker's commission. An offer for $255,000 was made on June 27, 2013, and expired on July 1. Karen and Peter were not aware of the offer until after it expired. They then learned that the house lot had not been listed for the agreed-upon price and so informed Deborah, who then relisted it for $275,000. After the relisting, another offer was made, this time for $260,000, which also expired before Karen and Peter received it. A final offer, also for $260,000, was made, which Karen and Peter rejected because they believed that Deborah had breached their contract and that they were therefore entitled to buy her out for one-third of $201,000.
Karen and Peter then brought an action in Probate and Family Court on November 24, 2014 (2014 action). The complaint sought both damages and specific performance of the contract and partition of the wood lot, which had not sold. Eventually the parties filed cross motions for summary judgment. Immediately after the hearing on these motions, at the suggestion of the court, the parties' counsel signed a stipulation according to which Deborah would file a petition for partition of the house lot and that the cross motions "shall be considered and apply as to that Petition as well as the current Petition/Complaint."
Shortly thereafter, Deborah filed a petition for partition that recited a minimum sales price of $255,000 (2016 action).[4] The next day, the court decided the cross motions for summary judgment in favor of Deborah, holding that her initial listing of the property at $265,000 was not a material breach. The plaintiffs appealed from the order, but this court dismissed the appeal as premature because the petition to partition the wood lot had not been resolved, and consequently there was no final judgment.
At a hearing on October 11, 2016, Peter, through his counsel, made an oral offer to purchase the house lot for $242,250, which is equal to the minimum sales price of $255,000, recited in the petition for partition, less a five percent realtor's commission. Karen was not present at that hearing. Following another hearing, in an order dated November 7, 2016, the court issued an "Order to Sell" the house lot to Peter for $242,250. This order was entered on the dockets of both the 2014 and 2016 actions, and Karen filed timely notices of appeal from the order in both actions. The records of these appeals have been assembled and are before us. After Karen filed her notices of appeal, Peter purchased the house lot, the deed was recorded, and the court entered a final decree on petition for partition of the house lot in the 2016 action. Karen also has appealed from this decree.
Discussion. Because final judgment has not entered in the 2014 action, we may consider only those issues properly appealed in the 2016 action. This includes the order to sell. In addition, the parties stipulated that the summary judgment order in the 2014 action would apply to the 2016 action. The docket sheet in the 2016 action does not refer to the stipulation or the summary judgment order, so we cannot be certain that the summary judgment order applies to it. Nonetheless, since the parties and the judge agreed that it would, we will assume so and consider that order as well, to which we turn first.
On the merits, Karen's appeal from this order is insubstantial. At oral argument, Karen's counsel represented that Karen is seeking specific performance of the contract, which she interprets to mean that Deborah should be ordered to sell the house lot to her, and perhaps also Peter, for $201,000. But the contract by its plain terms does not entitle her to this. The contract says that, if the broker were to receive no offers above $215,000, then Karen and/or Peter would acquire the option to buy Deborah out of her share of the house for her share of $201,000. Even assuming there was a breach of the contract by Deborah, the contract does not say that this option would arise in the event of such a breach. And the parties stipulated that Karen and Peter rejected an offer of $260,000, which rendered the $201,000 clause inoperative because this offer was for greater than $215,000.
Karen also argues that she is entitled to damages resulting from Deborah's delay in listing the house lot, her initial listing of the property at $265,000 instead of $275,000, and her failure to include terms in her agreement with the broker that restricted the broker's commission. Since the broker never sold the house, Karen was not harmed by Deborah's failure to negotiate a contract with a broker that denied the broker a commission. And, because there were no offers at or above $265,000, and the house had not been sold before the complaint was filed, it would have been impossible for Karen to demonstrate any damages from either the delayed listing or the initial listing for $265,000.[5]
Finally, Karen objects to the November 7 order to sell, claiming that the sales price is without an evidentiary basis, that the order violates the Statute of Frauds, and that she did not agree to the sale. "An issue not raised or argued below may not be argued for the first time on appeal." Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) (quotation omitted). After carefully reviewing the record, we conclude that none of these arguments were made below: Karen's only objections below were that the petition was not noticed in the registry of deeds as required by G. L. c. 241, § 7, that the order to sell improperly deducted an expense of $141 for liability insurance taken out by Deborah, and that the net sale proceeds should be held in escrow until the ultimate resolution of the appeal that had recently been dismissed. Karen does not raise these arguments on appeal, and there is nothing in the record to indicate that Karen objected to the sale itself before the Probate and Family Court. Her arguments are therefore waived.[6]
Finally, with respect to the final decree on the petition for partition, Karen argues only that she did not receive notice of the time and place of the sale as required by the statute, G. L. c. 241, § 12, and that, therefore, the partition should be vacated and the final decree reversed. Because this argument was not raised in the trial court, however, it is waived. The sale was completed and the deed recorded just minutes before a hearing commenced on Karen's motion to stay the sale. Karen also argues that this was improper. To the extent this claim is properly before us, however, it, too, has been waived. Karen made no such argument below, and at the hearing itself, upon receiving a report of the recording of the deed, the position of counsel for Karen was not that the recordation or sale should be undone, but that the application for stay was moot.
Conclusion. The order to sell entered in the 2014 and 2016 actions, the final decree on the petition for partition entered in the 2016 action, and the summary judgment order entered in the 2014 action are affirmed.
So ordered.
Affirmed

Peter was Karen's coplaintiff in the breach of contract action and coobjector in the partition action but did not participate in the appeal.

The 2014 and 2016 actions were consolidated below.

Karen argues that the Probate and Family Court lacked jurisdiction over the breach of contract claim. Were this argument properly before us, we would hold that it is incorrect. General Laws c. 215, § 6, grants the Probate and Family Court general equity jurisdiction, which includes actions for specific performance of contracts. Compare G. L. c. 185, § 1(k ) (Land Court has jurisdiction over "[a]ll cases and matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved, including actions for specific performance of contracts"). In its order on the cross motions for summary judgment, the court concluded that it had jurisdiction because the breach of contract count is "only a specific performance request." We agree in light of our conclusion that it would be impossible for Karen to prove damages arising from a sale that had not yet occurred.

Given our conclusion that there is no merit to her appeal from the order on the cross motions for summary judgment, any complaint she might have had about holding the sale proceeds in escrow would, in any event, be moot.